MIRANDA GUERREÑA. Good morning, Your Honors. Robert Murray from Tucson, Arizona, for Frank Miranda, Miranda Guerreña. This is a case of an automobile stop, and what we're asking the Court to do is to reverse the ruling of the district court denying the defendant's motion to suppress. And we believe that this decision by the Court overlooks the Arizona statutes which are applicable regarding a traffic stop. Judge Roll of the district court in this case decided that he would not consider the statutes that are applicable regarding the right of a police officer to stop someone for a traffic violation. There are two competing statutes. One says that a traffic stop must be witnessed by a police officer, and the other says it doesn't have to be witnessed. In essence, the argument is that the government would make is that the officer can make a traffic stop if he's provided some information from another source, usually a different agency. The problem that I hope the Court should have with the ruling of the district court here is that the judge completely overlooked the fact that that was the reason and the only reason that they had for making the stop in this case. The judge in the district court in this case decided, I'm not going to rule on the issue of whether or not the officer had to witness a traffic stop. My ruling is based upon the fact that I believe that there was reasonable suspicion to stop the vehicle no matter what the statutes say. And the problem with that is that the factual situation in this case belies that decision by the Court, because the questioning of the officer Hammerstrom, who is the primary investigative officer in the Tucson Police Department in this case, he admits that they had to have the traffic stop in order to pursue, to search this vehicle. In other words, he says in the questioning, and I won't go through it specifically, but I asked him, I said, if you had a reasonable suspicion to stop the vehicle, well, why don't you just stop it and do what you had to do? And what he admitted, in essence, was, well, you can't arrest somebody based upon a hunch that maybe they're carrying narcotics in their vehicle. And it would have blown our investigation if we did that. Well, isn't the second part of what you just said the reason he gave as well? That had they, in an unmarked car, stopped him, they would have exposed themselves as being involved in a narcotics investigation, which apparently they weren't ready to complete. Well, Your Honor, yes. But I think that what Hammerstrom's responses meant was that he was admitting that that might be true, but that they didn't really have reasonable suspicion at that point, because if they had reasonable suspicion, they could have gone ahead and not used the rules of the traffic stop to stop him. The point is here is that the questioning, Officer Hammerstrom's responses to my question, he says, it'll just blow the investigation. They wouldn't have used the traffic stop, I don't think, if they had a reasonable suspicion. And if we backtrack here... Wouldn't it have blown the narcotics investigation? I agree, Your Honor, it would have. I absolutely agree it would have blown the investigation. That doesn't establish that they didn't have probable cause for that. But he admits, I think, he admits when I question him that they didn't have the reasonable suspicion yet. What they wanted to do, Your Honor, is to stop the vehicle. They had 22 minutes to bring a canine over to the vehicle to do a sniff on the car, which, of course, has been upheld many times. We get that all the time. And that's what they were going to do here. Now, the problem is, and my argument is, that the judge in the district court, by passing over the applicability of the statutes that should have applied here, he ignored the fact that the officers themselves, in essence, were saying, we don't have a reasonable suspicion, we have a hunch here. And, yes, Your Honor, it would blow the investigation. But if the traffic stop is upheld, doesn't this argument kind of... But it can't be upheld, Your Honor, and I'll tell you why. Because the government states or cites State v. Box, which is a case that was decided after the occurrences in this case. State v. Box is a case that interpreted the alternate Arizona statute to say a police officer does not have to have or does not have to witness the traffic violation himself to make the stop. The problem is, and I've cited them in my briefs, in my supplemental brief, is that the applicable law, State v. Box, was decided after this case. But the cases you cite, as I read those, talk about after-the-fact legislative pronouncements. This is a judicial construction of a statute, and so that seems to me to be a different thing. Your Honor, I respectfully disagree with the Court. I think that the cases like State v. Fell that I cited talk about applications of the laws decided by the courts when they occur after what happened in the case. In other words, I don't think it's restricted to the situation where there are simply statutes that are enacted after the occurrences in a case. But my interpretation is that our courts have said that if there's case law that's not what applies. If we're interpreting, if the courts are interpreting statutes, the interpretation the court makes of the statutes at the time the incidents in the case occurs is what applies. In this case we have case law in the Ninth Circuit that basically says if you have a judicial interpretation of a statute, then that's an authoritative statement as to what the statute meant both now and before. It's simply a judicial construction of the statute. So how do you get around that case? Well, Your Honor, the – I think that the cases that I cited, there's two Arizona cases, State v. Fell and the other doesn't come to mind. Here's how I get around it, Judge. If we analyze the situation further in terms of whether they could have made the stop or not, this Court has said in the Robinson and Thomas cases, and the Court said it to talk about the Hensley case, the United States Supreme Court's in Robinson and Thomas, which are Ninth Circuit cases. And those cases talk about when an officer has a right to make a stop based on – based on information supplied by another agency. And the truth is that the facts in this case are so thin they do not even begin to approach the situations in Thomas and Robinson in which this Court said, you know, an officer who didn't witness a traffic violation cannot make a stop based upon information supplied by another agency that is as thin as this. And in this case, Your Honors, Deputy Davila, here's what he knew. He knew there was some sort of an investigation going on. He got third-hand information from an officer on the radio saying, we're going to get probable cause to stop this vehicle, which is okay, I guess. I mean, our courts have said that's okay. But the point is, when he pulled him over and when he was questioned on cross-examination, he didn't know what violations he'd committed. He didn't know – he didn't know what – where they had happened. When I – if you look at the record, I said that's about three miles away from where he were. Is that correct? In fact, he was in – the officer who stopped him was incorrect in where the violations even occurred. So he was uncertain as to what the violations were. He was uncertain as to where they occurred. And all he knew besides that was that the officers who had originally communicated with him were conducting some sort of an investigation, assuming, I guess, it was a narcotics investigation. But so, Your Honor, the answer to your question, I think, lies with what did the officer who made the stop know. And in this case, basically nothing. I mean, he was out there – he was somewhere behind the officers in this case physically, was – Well, he knew what he had been told over the radio. And what he had been told over the radio is, we have seen two traffic violations. Yes. That's true. But if you – Your Honor, if you look at the Thomas case and the Robinson case decided by this court, that kind of information is insufficient for him to – for him to make the stop. I mean, he's got a – and the Botts case that the state relies on – or that the government relies on, pardon me, that's a different factual situation, too, because you had the officer who was making the stop following directly behind the officer who gave the instruction to make the stop. In that case, the officer who saw the violation was transporting to prison, couldn't make the stop. So fact – my argument is that factually in this case, the – the investigative officer admitted that there was insufficient reason or reasonable suspicion to stop the vehicle. They did rely on the traffic stop. And no matter how the statutes are interpreted, even if you – I'm out of time, but if you interpret the statute to mean that an officer who does not witness the violation of the law can make the stop, certainly under this actual situation, he didn't know enough to make the stop under the case law. Thank you. Thank you. Good morning. May it please the Court. I'm Bob Miskell from the U.S. Attorney's Office in Tucson on behalf of the government in this case. I guess you were spending the week in San – in San Francisco since we've seen you before. It's good to be back. In this case, there were two independent bases to justify the stop of the vehicle the defendant was in. There was the traffic violations that were observed by Officer Hammerstrom, and then there were the results of the surveillance that supplied reasonable suspicion or founded suspicion that drug trafficking activity was going on. But either one of those bases in and of themselves is sufficient to stop the vehicle. The district judge chose only one of those two. That's correct. The only – the district judge found that there was reasonable suspicion for – to support the stop for narcotics trafficking and did not address the traffic stop at all, basically, because he didn't need to, because he found that evidence was sufficient. And the Court's – the district court's decision in that regard was correct. There was sufficient evidence to establish founded suspicion. Suppose we disagree with the district judge. Do we – do we have to reverse? I think at best, if you disagree with the district judge, the remedy might be to remand it for the court – the district court to address the traffic stop in the first instance, perhaps. Or you could find on your own, on the basis of what's in the record, that there was a sufficient basis to – to support the traffic stop. I think either one of those alternatives would be – would be okay. In this case, though, I – I disagree with what Mr. Murray said somewhat, that the officer conceded that he didn't have reasonable suspicion of narcotics trafficking to stop the vehicle. If you look at the transcript, and it's at page 54 through 56 of tab 2 in the excerpt of the record, Mr. Murray was certainly trying to get the agent to admit that, but the agent – the officer repeatedly stated that he was making that stop because he didn't want to essentially blow the fact that they were surveilling him. They were surveilling the defendants. At one point, eventually, the district court sustains my objection that the – Mr. Murray was trying to get the officer to make a legal conclusion. So I don't think he conceded that. The only thing he conceded is, quote, you don't arrest people for possible narcotics violations, which is correct. But that's a different issue from whether you have reasonable suspicion to stop a vehicle. In this case, the surveillance the officers conducted demonstrated that there was reasonable suspicion of narcotics trafficking. You have – first of all, they have the background information about the defendant's criminal history that certainly suggests some involvement in drug trafficking. Then you have what they saw during the three-day surveillance, which was a series of short-term visits, driving to bars, making – waiting 10-minute visits, that kind of thing. And then ultimately observing at a Circle K convenience store what the officer described in his experience as a very common method of transacting narcotics, where somebody gets into the car, they fiddle around with something on their laps, and the person exits the car about four minutes later. All of that together supported the stop of the vehicle for a narcotics trafficking, and the judge – the district judge correctly ruled on that. As far as the traffic stop, the facts in the record also support stopping the vehicle for a traffic stop. The fact that the stop – the officer actually making the stop did not personally observe the traffic violations does not affect the validity of the stop. And in fact, the Arizona court of appeals in the Box case made that in basically interpreting Arizona law, cleared up the issue of whether under Arizona statutory law it had to personally be observed. And the Box court said it didn't. And because it's a judicial interpretation of a statute, it does apply retroactively. And once you have that, that is certainly very consistent with the collective knowledge concept that applies. You look at the knowledge of the totality of the knowledge of all the officers involved and not the knowledge of the officer making the stop. So in that – again, in that scenario, the stop is supported. Does specifically detailed information have to be relayed to the third-party officer making the stop, however? I didn't hear the first party. Does the officer making the stop have to have in his possession at the time he makes the stop sufficiently detailed information that would justify a stop? No, he doesn't. And that is best demonstrated, I think, if you look at the three cases that are cited in the second supplemental brief. The issue and what you focus on in that scenario is what is the knowledge of the officers transmitting the information, not the knowledge of the officer receiving the information and actually making the stop. And basically, the case is all recognized to reality that people, officers have to make stops based on, you know, radio transmission, stop that car kind of stuff. And that's essentially what happened in this case. The surveillance officers were in unmarked vehicles. They actually didn't have the capability to make a traffic stop. So they called in a uniformed officer in a marked vehicle to make the stop. Again, it's not what the officer who made the stop knew. It was their sufficient information. Again, it has to be presented, obviously, at the motion to suppress, but sufficient information to justify the stop. And the government did that in this case. Unless the Court has any further questions. Thank you. I'll just disagree with Mr. Mitchell's last comments. And I think that the case law says that it's not the collective knowledge of the officers. The case law, particularly the two definitive cases in this circuit, Thomas and Robinson say the police officer who makes the stop has got to have sufficient information to make the stop. I mean, here he knows so little. If the Court examines the record, and I believe I've cited the appropriate places, that this officer really didn't know what was going on. All he knew was we're going to get some probable cause to stop this vehicle. And there were some traffic violations. I don't know where they occurred. But Deputy Rodriguez got some information from Detective Hammerstrom, and it's getting to me third party or third hand, and I'm going to make the stop. The record also shows in this case, by the way, and I can't cite the specific place in the record to the Court, but that the officer never even issued a citation in this case, at least until apparently sometime later. There was no talk of that. I mean, he stopped the vehicle. There was no suspicious behavior. They detained him for 22 minutes until they got a dog there. And there was some stuff that happened in the interim that caused the police to be suspicious because Mr. Guerreño tried to flee the vehicle. But apart from that, the dog didn't hit on the vehicle. The officer who made the stop really had little, if any, knowledge about why he was stopping that vehicle. They didn't even know where the violation occurred. The case of the United States v. Coronel Guerreño is submitted. Thank both counsels for your argument. And the last case for argument today is Alberni v. McDaniel.
judges: Alarcon, McKeown, Holland